IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARCELLUS A. FRENCH, SR., M21081, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 23-cv-2948-DWD |
| ANTHONY WILLS, MAJOR ROWLAND, JOSHUA A. SCHOENBECK, ANTHONY B. JONES, C/O GARCIA, SARA McCLURE, MARGARET MADOLE, LATOYA HUGHES, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Marcellus A. French, Sr., an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Specifically, Plaintiff alleges that his rights were violated during two separate disciplinary proceedings, the conditions of confinement in segregation were improper, he has been denied medical care, and his grievances have been mishandled. He seeks a variety of declaratory, injunctive, and monetary relief.

The Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner

complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff's factual allegations are about 30-pages, but his complaint is accompanied by 240-pages of exhibits, which he references extensively in support of his factual allegations. On November 8, 2022, Plaintiff was escorted from the yard to segregation, and he was charged with a dangerous disturbance and disobeying a direct order. (Doc. 1 at 12). He alleges that at his hearing on these tickets he was not allowed to call witnesses or to tender a written statement. Plaintiff was found guilty of the tickets, and he received 28 days in segregation, one month of C-grade, and an increase in his aggression level. (Doc. 1 at 12-14). Upon completion of the segregation time, he was released to the East House, which he alleges is filled with "bad inmates" and does not have the same privileges as general population.

In January of 2023, he acquired a new cellmate in the East House. Within a month of the new living arrangement, drugs were discovered in the cell on or around February 9, 2023. However, he did not receive a disciplinary report until April 29, 2023. On April 29 he was escorted to segregation, and he was charged with drugs or drugs paraphernalia and contraband. On May 3, 2023, he had a disciplinary hearing before Defendants Joshua

Schoenbeck and Anthony Jones. He explained that he believed that he was innocent, and that he believed institutional rules and procedures had not been followed for the issuance of the ticket. Despite his arguments, Plaintiff was found guilty. He does not allege in text of the complaint what his punishment was, but he did append the disciplinary findings, which show that he got six months of segregation time, six months of C-grade, and six-months of contact visit restrictions. (Doc. 1-2 at 23-24).

Plaintiff is adamant that the conditions of segregation have been extreme and inhumane. As of the filing of the complaint, he stated he had been in segregation for 102 days. (Doc. 1 at 29). During this time, he was stuck in the middle of an inmate/staff riot, that involved feces, urine, flooding, a suicide, and the use of mace. He alleges that nothing was cleaned until "days later," showers were not given for weeks, and food portions were decreased. (Doc. 1 at 18). While in segregation he alleges that he has only been to yard about five hours, his personal property has been mishandled, he has not had adequate access to the courts or to educational programming, his family and friends have been denied visitation (by video or in person), he was denied the ability to marry his fiancé, and he missed his grandfather's death. (Doc. 1 at 18-20). He alleges that these deprivations are part of a pattern or policy of misconduct, and that some of these things violate prison polices, directives or procedures.

He further alleges that he believes this 'pattern of misconduct' is being extended to him because he has filed grievances. (Doc. 1 at 20).

Plaintiff goes on at length about various provisions of the Illinois Administrative Code, institutional rules, and administrative directives that he believes have been

violated by his disciplinary proceedings and other prison actions. He argues Defendants Schoenbeck and Jones completely disregarded the Administrative Code and Administrative Directives.

Plaintiff argues that his Due Process rights have been violated by the disciplinary convictions because the convictions might have an impact on his ability to secure a sentence reduction. Specifically, he explains that because he was sentenced at 20 years old for first degree murder, he may be eligible for a sentence reduction. (Doc. 1 at 27-28). He avers that one of the most important factors for sentence reduction is prison disciplinary history. Plaintiff attached documentation to his complaint that showed a petition for leave to appeal the denial of his sentence reduction to the Illinois Supreme Court. (Doc. 1-2 at 51-72).

Plaintiff alleges that he has raised concerns about the issues in his complaint to grievance officer Sara McClure, gallery officer Garcia, major Rowland, and Chief Administrative Officer Anthony Wills to no avail. (Doc. 1 at 31). He also appealed his grievances to the Administrative Review Board (ARB) where they were denied by Defendants Latoya Hughes and Margaret Madole. He alleges these rulings on his grievances have violated prison policies by failing to remedy the problems he identifies. Plaintiff alleges that the grievance process is incompetent, and that the Defendants have firsthand knowledge of his rights, but they have refused to act. (Doc. 1 at 32).

Plaintiff summarily alleges that he has been denied medical treatment, but he does not state what treatment he sought. (Doc. 1 at 32).

Based on the allegations in the Complaint, the Court designates the following counts:

**Claim 1:** Fourteenth Amendment Due Process claim concerning November 2022 disciplinary ticket;

**Claim 2:** Fourteenth Amendment Due Process claim against Defendants Schoenbeck and Jones concerning April 2023 disciplinary ticket;

**Claim 3:** Eighth Amendment conditions of confinement claim concerning segregation placement.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Preliminary Dismissals

Plaintiff alleges in shotgun fashion that Defendants Wills, Rowland, Garcia, McClure, Madole, and Hughes have violated his rights by failing to act on his grievances, or by simply affirming rulings from earlier stages of the grievance process. This claim is insufficient for two reasons. First, as to Defendants Rowland and Garcia, it is not clear what their role was in any alleged harm. They are identified as a major and a correctional officer, so it is not immediately obvious what role they might have had in the grievance process. Section 1983 liability hinges on the personal involvement of each defendant in

an alleged constitutional harm. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Without clarity on what Rowland or Garcia did, the claim against them is insufficient.

Second, Plaintiff names Defendants Sara McClure and Anthony Wills (the Chief Administrative Officer). The Court will assume these two individuals participated directly in the processing of grievances as a grievance officer (grievance reviewer) and the CAO (final signatory on grievances), but the mere processing of a grievance without participation in an underlying harm is insufficient to state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (prison grievance procedures are not mandated by the First Amendment, and the alleged mishandling of grievances by persons who did not otherwise cause or participate in the underlying conduct states no claim). The same rationale applies to Defendants Hughes and Madole, who allegedly processed the grievances at the ARB.

The mention of Rowland, Garcia, McClure, Wills, Hughes, and Madole in relation to grievance processing is the only mention that Plaintiff makes of these defendants in the entire complaint. As such, he has failed to state a sufficient claim against these parties, and they will all be dismissed without prejudice.

Plaintiff also mentioned near the end of his complaint that he has not received adequate medical care, but he does not specify conditions for which he needs medical care. Although there might be information buried in the 240-pages of exhibits about this topic, the Court is not required to hunt endlessly to decipher Plaintiff's potential claims. Accordingly, any claim about medical care is dismissed as inadequately pled.

The Court also notes that to the extent Plaintiff repeatedly stresses violations of prison procedures or directives, none of these allegations are sufficient to state a claim because the violation of a prison policy, or even a state law, is not sufficient to state a § 1983 claim. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects inmates from constitutional violations, not violations of state laws, or prison regulations or policies).

## Discussion

**Claim 1**

Plaintiff alleges that in November of 2022 he was disciplined for two offenses and his disciplinary proceedings violated his right to Due Process. To establish a due process claim related to disciplinary proceedings, an inmate must demonstrate: (1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient. *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). Six months in segregation and six months' loss or restriction of privileges—do not, without more, implicate a protected liberty interest. *See Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (six-month disciplinary segregation alone); *Lekas v. Briley*, 405 F.3d 602, 605, 613 (7th Cir. 2005) (temporary loss of contact visitation and restricted commissary); *Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995) (six-month disciplinary segregation and demotion to C grade). A plaintiff may also argue that the combination of disciplinary measures deprived him of a protected liberty interest. *See Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015). As punishment, Plaintiff received 28 days of segregation, a one-month reduction to C-grade, and an increase of his aggression level. None of these consequences

are sufficient to invoke a liberty interest, so he has not stated a claim related to the November 2022 discipline.

**Claim 2**

Plaintiff alleges that his disciplinary ticket in April of 2023, and his hearing in May of 2023, also violated his Due Process rights. He does not allege in the body text of his complaint what kind of punishment he received, but he appended the disciplinary findings. (Doc. 1-2 at 23-24). Plaintiff received six-months of C-grade, six-months of segregation, and a six-month restriction on contact visits. As explained above, six months in segregation or with restrictive privileges do not automatically invoke due process protections. To implicate a liberty interest based upon six-month consequences, Plaintiff must also demonstrate that the conditions of his segregation term caused an atypical and significant hardship. *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). To make a showing of atypical and significant hardship, an inmate must show that "the conditions of his confinement in his segregated cell deviated substantially from the ordinary conditions of prison life." *Id.* at 721. A vague description of a cell, without comparison to ordinary conditions is not sufficient. *Id.*

Plaintiff claims his conditions in segregation were atypical, but most of the things that he identifies do not appear to be unique to segregation. For example, he alleges that he was unfortunately caught in the middle of a riot between inmates and guards which included human waste, flooding, mace, and even a suicide, but while unpleasant, this is something that could happen in segregation or in general population. He claims that it was 'days' before things were cleaned up after the riot, but he does not say how long, or

what it was actually like without cleaning. Plaintiff also claims he missed his wedding, and he missed his grandfather's death, but again, these are things that might also have happened in regular prison life.

Plaintiff alleges that he has not had much access to yard-time, but he does not allege he has no ability to exercise. He also alleges there have been restrictions on shower access, but he does not go into detail about what that has looked like or how long it has lasted—other than that there was a shower restriction for a few weeks following the riot. Plaintiff complains about access to educational materials or legal materials, but there is not a liberty interest in educational materials, and he has not shown that he had any legal claims impaired by limited legal access. *See, e.g., Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (there is no liberty interest in attending prison classes); *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000) (there is no constitutional mandate to provide educational, rehabilitative or vocational programs to inmates). Plaintiff also alleges there has been a reduction in the amount of food served, but this allegation is vague. In total, Plaintiff has not described conditions that are unique to segregation itself, and that are sufficient to establish that his six-month segregation placement is atypical and significant.

In relation to both Plaintiff's first and second claims about discipline, he argues that the disciplinary outcomes implicate due process because disciplinary convictions might bear on his ability to receive a reduced sentence. This claim seems comparable to a claim that Plaintiff improperly lost good time credit, or the chance at good time credit. Assuming for a second that Plaintiff is claiming he lost good-time credit, or the chance to earn good-time credit---he can only pursue a claim that he was wrongfully charged under

§ 1983 related to this issue if he can show that the guilty finding for the disciplinary proceedings was overturned. *Edwards v. Balisok*, 520 U.S. 641, 643 (1997); *Moon v. Galipeau*, 2023 WL 6584173 at * 2 (N.D. Ind. 2023) (if an inmate did not actually lose any good time credit, then a liberty interest is not invoked).

Ultimately, it appears that for Plaintiff's purpose the implications of the disciplinary proceedings will not matter. Plaintiff attached to his complaint a copy of a Petition for Leave to Appeal to the Illinois Supreme Court (Doc. 1-2 at 51-72). In the Petition, counsel seeks the reconsideration of the Illinois Appellate Court's denial of his request for a reduced sentence. The Court checked the status of this Petition on the Illinois Supreme Court's website and determined that the Petition was denied on September 27, 2023. Petition for Leave to Appeal Dispositions, https://www.illinoiscourts.gov/courts/supreme-court/leave-to-appeal/ (last accessed November 9, 2023). Given that the Petition has been denied, Plaintiff cannot even say prospectively now that a reduced sentence was thwarted by his discipline, so he has not lost any chance at a reduced sentence based on the discipline and this potential consequence does not translate to a protected liberty interest.

**Claim 3**

The Court also considered if Plaintiff had made sufficient allegations to proceed under the Eighth Amendment concerning the conditions of his confinement in segregation, because sometimes an inmate can maintain an Eighth Amendment challenge even when a Fourteenth Amendment challenge fails. Here, Plaintiff's complaint falls short because even if he has identified conditions that were constitutionally deficient, he

has not associated these allegations with any named defendants. As such, Claim 3 is subject to dismissal without prejudice.

For these reasons, the Court finds it appropriate to dismiss Plaintiff's Complaint for failure to state a claim. Plaintiff will have 30 days from the date of this Order to file an Amended Complaint. The Amended Complaint will completely replace the earlier complaints. See Flannery v. Recording Indus. Ass'n of Am., 354 F.3d 632, 638 n. 1 (7th Cir. 2004). Failure to submit an Amended Complaint on time could result in the dismissal of this entire lawsuit for failure to state a claim or failure to prosecute. FED. R. CIV. P. 41(b); Ladien v. Astrachan, 128 F.3d 1056-57 (7th Cir. 1997) (dismissal is allowed for failure to comply with a court order); 28 U.S.C. § 1915A. Plaintiff is encouraged to keep his amended complaint short and concise. If he attaches hundreds of pages of exhibits, the Court will not hunt through the exhibits to determine if he has pled valid claims. He should focus on the basics, the who, what, when, and where of his allegations.

## DISPOSITION

Plaintiff's Complaint (Doc. 1) is dismissed for failure to state a claim. He shall have 30 days to file an amended complaint, failing which this case may be dismissed in full. Plaintiff's Motion for Status (Doc. 10) is **GRANTED** by the issuance of this Order.

**IT IS SO ORDERED.**

Dated: November 13, 2023

/s David W. Dugan
_____
DAVID W. DUGAN
United States District Judge