IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARCELLUS A. FRENCH, SR., | ) |
| M21081, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 23-cv-2948-DWD |
| ANTHONY WILLS, | ) |
| MAJOR ROWLAND, | ) |
| JOSHUA A. SCHOENBECK, | ) |
| ANTHONY B. JONES, | ) |
| C/O GARCIA, | ) |
| SARA McCLURE, | ) |
| MARGARET MADOLE, | ) |
| LATOYA HUGHES, | ) |
| | ) |
| Defendants. | ) |

## <u>MEMORANDUM & ORDER</u>

**DUGAN, District Judge:**

Plaintiff Marcellus A. French, Sr., an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 12). Specifically, Plaintiff alleges that his rights were violated during two separate disciplinary proceedings, the conditions of confinement in segregation were improper, he has been denied medical care, and his grievances have been mishandled. The Court dismissed Plaintiff's initial complaint for failure to state a claim, and Plaintiff has now filed a timely Amended Complaint (Doc. 12) that is before the Court for initial review. 28 U.S.C. § 1915A.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a)-(b).  Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE AMENDED COMPLAINT

Plaintiff's Amended Complaint is similar in many regards to the original, and it still focuses on two disciplinary proceedings, his conditions of confinement while in segregation, his requests for medical care, and the processing of his related grievances. The first disciplinary incident at issue began on November 8, 2022, when Plaintiff was removed from yard and was charged with a dangerous disturbance and disobeying a direct order.  (Doc. 12 at 4-5).  Plaintiff alleges he intended to call two witnesses to the associated disciplinary hearing, but he was neither allowed to call the witnesses nor to adequately present his side of the story.  (*Id.* at 5-7).  Defendants Schoenbeck and Jones presided over the hearing.  Plaintiff argues that by denying him a witness, his due process rights were implicated.  (*Id.* at 7).  He further contends that this disciplinary proceeding did not follow the prison's internal administrative code, and Defendant Anthony Wills condoned the violation of his rights by declining emergency status for a related grievance.

As a result of the November disciplinary proceeding, Plaintiff received 28 days in segregation, 1 month of c-grade demotion, and an increase in his aggression level from a moderate to a high.  (Doc. 12 at 10).  Plaintiff contends that as a result of his increased aggression level, when he was released from segregation he was moved to the "East House" to be housed amongst other high aggression inmates.  Plaintiff argues that the East House is the "bad inmate" unit and that residents receive fewer privileges than others in general population status.

Plaintiff argues that from December 6, 2022, through April 29, 2023, he lived in the East House where he had less amenities, such as reduced yard time (five hours instead of ten), reduced showers and sanitation practices, and no Islamic prayer services.  (Doc. 12 at 11-12).  He argues that the amenities afforded in East House fall below the standards set forth for offender conditions of confinement in the IDOC Administrative Directives. Plaintiff attempted to grieve the conditions of his confinement, but he faults Defendants Wills, Margaret Madole and Latoya Hughes for "incompetently" denying his grievances. (Doc. 12 at 12-13).   Plaintiff further argues that because the conditions fell below those set forth by administrative directives, then they should automatically be deemed an atypical and significant hardship.  (Doc. 12 at 14-15).

Plaintiff's second disciplinary incident began on April 29, 2023, when he received a disciplinary report concerning items that were located in his shared cell during a February 9, 2023, shakedown.  He alleges that Defendants Schoenbeck and Jones again presided over the associated disciplinary hearing, which he contends did not comply with due process requirements.  Notably, he argues that per the Administrative Code,

the disciplinary report was served too long after the underlying conduct, and the underlying charges were not properly substantiated by the terms of the applicable rules. Based on the identified flaws with his disciplinary proceeding, Plaintiff argues that the proceedings violated his due process rights. Plaintiff also argues that he was excessively sentenced for the infractions, though he does not state what he believes his sentence should have been. (Doc. 12 at 24-25). Ultimately, Plaintiff states that he was in segregation from April 29, 2023, through September 8, 2023, for this second disciplinary incident. (Doc. 12 at 32). As with the first disciplinary incident, Plaintiff grieved this disciplinary outcome to Defendant Wills, and he faults Wills and grievance officer Sarah McClure for deeming the grievance a non-emergency and not granting him any relief. (Doc. 12 at 25-26).

In addition to his arguments about the actual disciplinary proceedings, Plaintiff contends that another offender charged with the same offense had his disciplinary conviction expunged because the disciplinary proceedings did not establish who "possessed" the drugs or contraband in question. (Doc. 12 at 29-31). Plaintiff argues that his proceedings had the same defect, so his charges also should have been expunged.

Plaintiff further contends that his disciplinary conviction implicates a liberty interest because he continues to seek a reduction of his underlying criminal sentence based on the premise that he was convicted of a crime as a juvenile, and prison disciplinary infractions are a leading factor in the consideration of a reduced sentence. Plaintiff admits, as the Court pointed out in the review of his initial complaint, that the Illinois state courts have now rejected his postconviction pleadings on this issue, but he

contends he has a federal habeas matter on the same topic that is currently stayed. (Doc. 12 at 26-29).

Plaintiff goes on to argue that the conditions in segregation from April 29, 2023, to September 8, 2023, were atypical and significant, and he also argues that they violated the Eighth Amendment. He repeats the argument that because the conditions did not satisfy internal prison directives about conditions, then they should automatically be deemed atypical and significant, and considered cruel and unusual. (Doc. 12 at 32-34). He argues that among other things, on June 8, 2023, the gallery was flooded with feces, urine, and waste, and he was not provided with any sanitation products to clean his cell. He managed to clean the inside of his cell to the best of his ability with products he already possessed, but filth outside the cell and on his cell bars was not cleaned for another eight days. (Doc. 12 at 34-45).

Throughout his stay in segregation, he claims he was deprived of showers for weeks at a time. (Doc. 12 at 35). He also states that "he has went a week without one shower," which is far less than the three per week that should be afforded under institutional directives.

Plaintiff also lived next to and around seriously mentally ill ("SMI") offenders who screamed, banged on the walls, threw feces and urine, and engaged in quarrels with officers that prompted the frequent discharge of chemical agents. (Doc. 12 at 36). These disturbances caused him to lose sleep and peace of mind.

During his stay in segregation, he received a total of just 5.5 hours of outdoor recreation. Plaintiff claims the cells are so small that he was entirely unable to exercise in

his room.  He has preexisting injuries that require him to stay active to maintain full use of his limbs, but without any outdoor or indoor recreation, he was unable to keep up on necessary exercises.  (Doc. 12 at 37-38).  Plaintiff has also been exposed to second-hand smoke and has grieved that issue to no avail.  (Doc. 12 at 38-39).  Additionally, he claims the meals in segregation do not meet basic caloric needs, and as a result, he has lost significant weight.  Plaintiff alleges that he sought medical care or treatment for issues associated with the lack of exercise, the secondhand smoke, and the weight loss, but he has not been seen.  He adds that he also sought medical attention after he had to clean human waste from his cell without proper protection.  (Doc. 12 at 41).  Plaintiff faults Defendants Garcia and Rowland for his lack of medical care because they were in charge of his cellhouse or of restrictive housing during his stay in segregation.  (Doc. 12 at 40-41).

Plaintiff argues that although some of the conditions he experienced might not be enough standing alone to violate the constitution, the conditions taken together are sufficient to maintain an Eighth Amendment claim.  He argues that Anthony Wills should be faulted for the conditions because he should have created or led a committee on restrictive housing, but the committee did not correct flaws with the housing conditions. (Doc. 12 at 42-43).

Finally, Plaintiff has designated a fourth claim against Defendant Wills for retaliation.  (Doc. 12 at 43).  Specifically, he claims that he grieved issues related to his discipline and housing and he submitted his grievances as emergencies to ensure they went directly to Wills for review, but Wills deemed them non-emergencies.  Among the

items grieved and dismissed, Plaintiff claims that during his segregation ordeal he was prevented from taking an exam for educational programming.  Plaintiff tried to grieve issues related to his education and the exam, but Wills deemed the grievance a non-emergency.  While in segregation, Plaintiff was recorded as a no-show for his exam.  (Doc. 12 at 47).  During this same time, Defendant Garcia told Plaintiff that his "superiors" instructed him not to let Plaintiff attend the exam.  Based on this series of events, he argues it is clear that Wills knew his rights were being violated and willfully turned a blind eye.  (Doc. 12 at 48).

Plaintiff attributes these "adverse actions" to a course of retaliation that is being enacted because he filed the present lawsuit.  (Doc. 12 at 50).  He claims that prior to the incidents described in the complaint, he had not been in trouble for over five years, but since he started grieving the issues described in this complaint, and then filed this lawsuit, things have drastically changed for him at the prison.  (Doc. 12 at 50-52).

In the closing paragraph, Plaintiff adds that his First and Fourteenth Amendment rights have been violated because his right to observe his religion has been restricted.  (Doc. 12 at 53).

Along with the 53-page complaint, Plaintiff submitted approximately 270-pages of exhibits that he referenced extensively throughout his complaint.  The exhibits include grievances, affidavits, prison administrative documents, disciplinary documents, and more.

Based on the allegations in the Amended Complaint, the Court designates the following counts:

Claim 1:    **Fourteenth Amendment Due Process claim against Defendants Schoenbeck and Jones concerning November 2022 disciplinary ticket;**

Claim 2:    **Fourteenth Amendment Due Process claim against Defendants Schoenbeck and Jones concerning April 2023 disciplinary ticket;**

Claim 3:    **Eighth Amendment conditions of confinement claim concerning segregation placement;**

Claim 4:    **First Amendment retaliation claim against Defendant Wills.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Preliminary Dismissals

As the Court found in relation to Plaintiff's original complaint, he has failed to state a claim against the defendants associated with the processing of his grievances, because mere participation in the grievance process, without participation in the underlying harm, is insufficient to state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (prison grievance procedures are not mandated by the First Amendment, and the alleged mishandling of grievances by persons who did not otherwise cause or participate in the underlying conduct states no claim). Plaintiff names Defendants Anthony Wills, Sarah McClure, Margaret Madole, and Latoya Hughes for their roles in

processing his grievances, but any such claim is insufficient and is dismissed for failure to state a claim.

Plaintiff also relies heavily again on the alleged violations that he has identified of various Administrative Directives, but as the Court previously stated, violations of prison policies or state laws do not give rise to a constitutional violation. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects inmates from constitutional violations, not violations of state laws, or prison regulations or policies).  While violations of policies on things such as the conditions of confinement in restrictive housing may be evidence in support of a conditions of confinement claim, violations of the internal policies themselves do not automatically equate to constitutional violations.   Accordingly, Plaintiff's arguments that the violations of the policies themselves should be deemed atypical or cruel and unusual are unavailing.

Plaintiff mentions his ability to observe his religion in passing throughout the complaint and in the last paragraphs, but he has provided insufficient information to maintain a First Amendment claim related to his religion because the allegations are vague and are not associated with any individual defendants.

Plaintiff also argues that he was unable to secure needed medical care while in segregation.  Specifically, he claims he sought care for: being forced to clean human waste without proper protective equipment, for being forced to deal with hunger pains, and for being denied exercise, which exacerbated his pre-existing injuries.  (Doc. 12 at 41). Plaintiff attributes the lack of medical attention to Defendant Garcia who oversaw his gallery five days a week, and Major Rowland who was in charge of safety and security

on the restrictive housing committee.  To establish a denial or delay of medical care deliberate indifference claim, a plaintiff must identify an objectively serious medical condition and an individual's subjective disregard of the risk to the inmate's safety or health.  *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).  A medical condition must be so obvious that even a lay person would recognize the need for medical attention.  *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Plaintiff's allegations are insufficient to hold Garcia or Rowland liable for his alleged medical care issues because his allegations are vague and do not specify when or how these two specifically prevented him from accessing care in relation to each of his alleged medical needs.  Plaintiff also does not describe his alleged medical needs with a level of detail that suggests a serious condition even a layperson would recognize as needing treatment, nor does he clearly describe physical injuries that resulted from the lack of treatment or the delay in treatment.  On the whole, Plaintiff's allegations regarding his need for medical care to too vague to proceed, and they will be dismissed as insufficient.

## DISCUSSION

### Claims 1 and 2

Plaintiff's factual and legal assertions concerning his due process rights and his two disciplinary incidents are much the same from the original complaint to the amended complaint.  As the Court previously stated, to establish a due process claim related to disciplinary proceedings, an inmate must demonstrate: (1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient.  *Lisle v.*

*Welborn*, 933 F.3d 705, 720 (7th Cir. 2019).   Before the Court considers if Plaintiff was afforded adequate procedures at a disciplinary hearing, it will first consider if a liberty interest was even implicated by the punishment imposed.   Six months in segregation and six months' loss or restriction of privileges—do not, without more, implicate a protected liberty interest.   *See Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (six-month disciplinary segregation alone); *Lekas v. Briley*, 405 F.3d 602, 605, 613 (7th Cir. 2005) (temporary loss of contact visitation and restricted commissary); *Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995) (six-month disciplinary segregation and demotion to C grade).   A plaintiff may also argue that the combination of disciplinary measures deprived him of a protected liberty interest.   *See Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015).

Plaintiff's first term of disciplinary segregation was just 28 days.   He does not identify any conditions during this first term that were unusually harsh.   As such, Plaintiff's complaint still fails to invoke a liberty interest.   Plaintiff argues that after his first stint in segregation he was released to the East House where conditions were considerably worse than other general population cellhouses, but even if the Court added this entire stay in the East House to consideration of his first disciplinary incident, that would still only amount to five months of consequences for the first disciplinary infraction, and would not be enough to automatically invoke a liberty interest.   The conditions he describes in East House included less recreation time and shower time than he was accustomed to accessing in other general population housing, but these

limitations do not persuade the Court that even construing the placement as some form of extended punishment, the housing caused an atypical hardship.

To the extent that Plaintiff argues after his first term of disciplinary segregation, he was further punished by release to the East House due to an increased aggression level, he cannot maintain a Due Process claim related to his aggression level because inmates do not have a protected liberty interest in their prison classifications.  *See e.g., Waldron v. Gaetz*, 2011 WL 2518782 (S.D. Ill. June 23, 2011) (finding that an inmate did not have a protected liberty interest where his aggression level was increased after a disciplinary infraction).

Plaintiff's second term of disciplinary segregation lasted from April 29, 2023, to September 8, 2023, which is a total of 132 days, or four months and ten days.  By duration alone, this stay in segregation does not invoke a liberty interest.  *See e.g.*, *Lisle v. Welborn, 933 F.3d 705, 721 (7th Cir. 2019)* (finding that four months in segregation for the discovery of contraband was not so atypical and significantly harsh that it immediately created a liberty interest).  However, unlike the first stay in segregation, Plaintiff described several conditions he faced during the second stay that he argues made it atypical.   The conditions include: lack of access to indoor or outdoor recreation time, lack of access to frequent showers, inadequate dietary offerings,  exposure to urine and feces thrown and spread about the gallery by other offenders, and exposure to frequent noise and disturbances created by other mentally ill offenders.  Plaintiff specifies that the exposure to human waste was most problematic for about eight days around June 8, 2023, at which time he was unable to clean up waste and filth on the outside of his cell.  He also specifies

that access to showers was irregular, although he indicates at most there was a one-week stint where he went without a shower.

As to the lack of recreation time and the disturbances from fellow inmates, he claims that these particular conditions were nearly constant, with just 5.5 hours of recreation in 132 days, and constant noise and disturbances of varying severity.   In *Hardaway v. Meyerhoff*, 734 F.3d 740, 744-45 (7th Cir. 2013), the Seventh Circuit found that six months with only one day a week to shower and access recreation activities did not constitute an atypical hardship, because Plaintiff was allowed to exit his cell at least sometimes.  By contrast, in *Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015), the Seventh Circuit suggested that a much shorter term than six months can be atypical if it involves extreme conditions such as only one hour of exercise per day in a small indoor room.  The conditions that Plaintiff has described about exercise are even more restrictive than what was described in *Kervin*.

Plaintiff alleges that over the course of four months, he was only allowed out of his cell for a total of 5.5 hours of recreation, and he adds that his cell was too small for him to conduct any meaningful exercise inside.  However, unlike *Kervin*, and many other recent procedural due process cases, Plaintiff has not suggested that he was deprived of all human contact or sensory stimuli.  In fact, to the contrary, Plaintiff's grievance about the access to out of cell recreation during this segregation stay indicated that he was afforded out-of-cell time to visit with family and loved ones and to attend medical/mental health appointments.  (Doc. 12-2 at 57-58) ("On 04.29.23 I was placed in segregation, today being 05.16.23 I have not been allowed out of my cell except for

visitation from my family and loved ones and a health care check up[.]").  Plaintiff also mentioned in relation to cleaning his cell that he had cell bars, which suggests he was not deprived of all human contact or sensory stimuli because he was not in a closed door cell. (Doc. 12 at 35) (mentioning Plaintiff's cell bars).  In light of this information, the Court finds that Plaintiff has not established that his stay in segregation amounted to an atypical and significant hardship.  Though Plaintiff's Fourteenth Amendment claim is insufficient, this does not foreclose an Eighth Amendment conditions of confinement claim related to the same circumstances.

Plaintiff also re-asserts the arguments he made earlier about his disciplinary sanctions potentially translating to a longer sentence.  The Court previously rejected this line of argumentation on the premise that Plaintiff claimed he was still a candidate for a sentence reduction in state court, but that publicly available state court documents showed that he had been denied the relief he sought.  Plaintiff adds now that he is still potentially eligible for a sentence reduction because he has a federal habeas case on the subject that is currently stayed.  Whatever the merit may be to this assertion, the Court finds that Plaintiff's bald assertion he may lose out on a shortened sentence because of his disciplinary proceedings is speculative and is not a plausible basis to infer a liberty interest for the purpose of his present due process claim.  *See e.g.*, *Moon v. Galipeau*, 2023 WL 6584173 at * 2 (N.D. Ind. 2023) (if an inmate did not actually lose any good time credit, then a liberty interest is not invoked); *Peacher v. Reagle*, 2023 WL 9119690 (S.D. Ind. Dec. 19, 2023) (discussing claims about the prospective loss of good time credit).  Additionally, if Plaintiff did ultimately lose good time credit, he would need to first challenge that issue

in a habeas proceeding. *Cochran v. Buss*, 381 F.3d 637, 639 (7th Cir. 2004) (federal habeas corpus is the exclusive avenue for federal relief of constitutional violations if the violations result in the loss of good-time credit or a reduction in the rate of earning good-time credit).

In sum, the Court finds that Plaintiff has failed to plead plausible due process claims in relation to Claims 1 and 2 against Defendants Schoenbeck and Jones because he has not demonstrated that either of his relatively short stays in segregation rose to the level of atypical and harsh conditions sufficient to create a liberty interest.

To the extent that Plaintiff attempts to fault any of the other defendants for his disciplinary proceedings, he cannot do so because at most he has alleged they have erred in handling related grievances, but as explained earlier, the handling of grievances alone does not give rise to a claim.

## Claim 3

To establish a conditions of confinement claim, an inmate must establish (1) a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), *citing Farmer v. Brennan*, 511 U.S. 825, 824 (1994). Conditions may be considered collectively when analyzing a conditions of confinement claim, and the duration of the allegedly harmful conditions is relevant to the existence of an Eighth Amendment violation. *Id.*

Plaintiff alleges that his conditions included virtually no out-of-cell exercise for 132 days, reduced meal portions[1], reduced showers (as few as one per week)[2], lack of access to sanitation supplies[3], exposure to secondhand smoke[4], exposure to constant noise and disruptions from mentally ill inmates, and exposure to human waste after other inmates caused a disturbance. Many of these conditions standing alone are not sufficient to give rise to an Eighth Amendment conditions of confinement claim, but they must also be considered collectively. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Most concerning is the lack of access to any form of indoor or outdoor recreation, which Plaintiff alleges harmed his health because he needs to stay active to avoid losing mobility in his upper extremities as a result of an old wound.

Plaintiff appended numerous grievances and other documents to his complaint. One grievance discusses the lack of recreation time, and the physical implications for Plaintiff with his existing injuries. Defendant Wills deemed the grievance a non-emergency, and he later signed off on the denial of the grievance in September of 2023. As the Seventh Circuit noted in *Gray v. Hardy*, an inmate's grievance signed by a warden may be sufficient evidence to maintain a plausible deliberate indifference claim against a warden concerning the conditions of confinement. 826 F.3d at 1008 ("Gray's grievance

---

[1] *Hruby v. Hodge*, 2013 WL 2403272 (S.D. Ill. 2013) (finding that an inmate failed to state a claim about reduced portions because he did not suggest he was ever completely deprived of food, nor that he faced an objectively serious risk of harm from the reduced portions).
[2] *Myrick v. Anglin*, 496 Fed. App'x 670, 675 (7th Cir. 2012) ("We have noted that limiting inmates to weekly showers does not violate the Eighth Amendment.")
[3] *Gray v. Hardy*, 826 F.3d 1000, 1005-06 (7th Cir. 2016) ("[W]e have recognized Eighth Amendment violations where prisoners are deprived of cleaning supplies…only in extreme circumstances.").
[4] *Powers v. Snyder*, 484 F.3d 929, 933 (7th Cir. 2007) (a prison is not required to provide a smoke-free environment unless smoke exposure specifically exacerbates an inmate's medical condition).

demonstrates the prison and the warden's knowledge of the conditions about which he is complaining.  The response he received was signed by Warden Hardy.  The grievance and response are thus sufficient to create a triable issue of fact on deliberate indifference.").  Furthermore, the Seventh Circuit has noted that "the lack of exercise can rise to a constitutional violation where movement is denied and muscles are allowed to atrophy and the health of the individual is threatened." *Smith v. Dart*, 803 f.3d 304, 313 (7th Cir. 2015) (internal citation omitted).  On the information presented, Plaintiff has a plausible claim against Defendant Wills concerning the lack of recreation time during his 132-day stay in segregation.

In addition to the access to recreation, Plaintiff alleges he had inadequate food in segregation, as well as occasional filth, exposure to secondhand smoke, and exposure to general pandemonium caused by other inmates.  As explained above, though these conditions alone are likely insufficient to state a conditions of confinement claim, they are also considered in aggregate.  However, unlike the lack of access to recreation, Plaintiff has not tendered documents or factual allegations that plausibly tie these particular issues to discrete defendants.[5]  The Court previously noted that Plaintiff could not proceed on conditions of confinement claims that were not associated with the personal

---

[5] At most, Plaintiff suggests he filed a few grievances about additional conditions such as exposure to smoke, cell placement, or medical needs, but it does not appear he included copies of these grievances, and instead just included a receipt.  (Doc. 12-3 at 53) (grievance receipt).  From this limited excerpt, the Court cannot adequately determine the contours of any such claim, and it cannot determine which named defendants might be personally responsible for these deprivations.  Plaintiff also included various affidavits, some of which go to his conditions claims, but which do not provide any further information about who was personally responsible for these issues.  (Doc. 12-3 at 64) (Plaintiff's affidavit about weight loss).

actions of any of the named defendants, and this remains true.  Because Plaintiff has not associated most of his conditions of confinement claims with any of the named defendants, the remainder of the allegations are insufficient to state a claim and will be again dismissed for failure to state a claim.

## Claim 4

Plaintiff alleges that the disciplinary proceedings he has faced in recent months, and the grievance rulings he has received, are all a result of ongoing retaliation from Defendant Wills.  He alleges that Defendant Wills repeatedly denied emergency status for his grievances about the disciplinary proceedings and conditions of confinement, and that Wills also interfered with his ability to complete a final exam for an educational program while he was in segregation.  A prison official may not retaliate against an inmate because he filed grievances under the First Amendment.  *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).  To show retaliation, an inmate must identify protected speech, a deprivation that occurred to deter the speech, and that the speech or protected activity was at least a motivating factor in the decision to take retaliatory action. Circumstantial evidence of a motivating factor or causal link may include suspicious timing or ambiguous statements, behavior, or comments, but suspicious timing alone is rarely enough to make out a retaliation claim.  *Id.* at 680-81.

Plaintiff's theory of retaliation is based purely on speculation.  He alleges for the five years prior to the events mentioned in his complaint he did not get in any trouble, was pursuing a prison education program, and was of good character, but after the multiple incidents of discipline and grievances he has now experienced a variety of

adverse actions.  He alleges that "clearly" the adverse things he has experienced are retaliation, but he does not have any support for this notion aside from the temporal relationship between the recent events.  At most, he alleges that Defendant Garcia told him he could not attend an education related exam because his superiors told him not to allow it, but the Court does not find that this one allegation makes Plaintiff's overarching theory of retaliation plausible.

<u>Conclusion</u>

Based on the foregoing analysis, the Court finds that Plaintiff has failed to plead a sufficient claim against Defendants Rowland, Schoenbeck, Jones, Garcia, McClure, Madole, or Hughes.  One of the major flaws with Plaintiff's original complaint and with his amended complaint is that many of his factual allegations have no tie to the individual actors.  To recover damages under § 1983, an inmate must establish that a defendant was personally responsible for the deprivation of a constitutional right.  *See e.g., Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023).  An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.  *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017).  The mere responsibility to oversee some aspect of the prison is generally insufficient to give rise to § 1983 liability.  "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly."  *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018).  By extension, a § 1983 plaintiff may not "insist that one employee do another's job."  *Burks v. Raemisch*, 555

F.3d 592, 595 (7th Cir. 2009). "Bureaucracies divide tasks." *Id.* The "view that everyone who knows about a prisoner's problem must pay damages ... can't be right." *Id.*

Here, although Plaintiff makes a wide variety of allegations about his experiences at the prison over the last two years, very few of his factual allegations tie to the direct actions of the named defendants. As such, many of the named defendants are now subject to dismissal because Plaintiff has not plausibly alleged their personal involvement in the facts asserted.

## Disposition

IT IS HEREBY ORDERED THAT **Claim 3** of the Complaint (Doc. 1) survives against Defendant Anthony Wills in his personal capacity. By contrast, **Claims 1-2 and Claim 4** are dismissed for failure to state a claim. All allegations against Defendants Major Rowland, Joshua A. Schoenbeck, Anthony B. Jones, C/O Garcia, Sara McClure, Margaret Madole, and Latoya Hughes have also been dismissed as insufficient and the Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Rowland, Schoenbeck, Jones, Garcia, McClure, Madole, and Hughes.

The Clerk of Court is **DIRECTED** to prepare for Defendant Anthony Wills: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 12), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the

forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

Plaintiff's Motions for Status (Docs. 10, 14) are **GRANTED** by the issuance of this Order.  Plaintiff's Motion to Show Cause (Doc. 13) is **DENIED** as **MOOT** because the Court did not treat his amended complaint as untimely.

**IT IS SO ORDERED.**

Dated: March 1, 2024

/s David W. Dugan

_____
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.